## UNITED STATES v. FRY.

United States District Court
S. D. New York.
March 6, 1952.

Myles J. Lane, U. S. Atty., New York City (Louis Grossman, Daniel H. Greenberg and Silvio J. Mollo, Asst. U. S. Attys., all of New York City, of counsel), for plaintiff.

Hayden C. Covington, Brooklyn, N. Y., for defendant.

IRVING R. KAUFMAN, District Judge.

The defendant urges two grounds upon which there should be a judgment of acquittal. For his first ground he says that there was no reasonable basis in fact for the action of the local draft board in refusing deferment.

For his second ground he states that there was a violation of the due process provisions of the Constitution in that he did not receive a notice of reclassification after his hearing before the board on June 8, 1949, and further, that the local board did not summarize in writing the information which he had supplied at that hearing as required by Regulation 1624.2 of the Selective Service Regulations.

With respect to the first ground urged by the defendant, the law has been enunciated quite clearly by two cases in the United States Supreme Court; Estep v. United States, 1946, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567, and Cox v. United States, 1947, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59.

■■■■ The Supreme Court, speaking in the Estep case, discussed the language contained in Title 50, U.S.C.A.Appendix, § 460(b)(3) which makes the decision of the local board final, and the decision of the Appeal Board final. "Final" was defined in the Estep case 327 U.S. at pages 122–123, 66 S.Ct. at page 427, 90 L.Ed. 567 as follows: "The provision making the decisions of the local boards 'final' means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction

of the local board is reached only if there is no basis in fact for the classification which it gave the registrant."

The question of whether there is a basis in fact for the classification of the registrant is a question of law for the courts to determine, and the Cox case so held. The court, speaking in the Cox case 332 U.S. at pages 448–449, 68 S.Ct. at page 118, 92 L.Ed. 59, adopted verbatim its language in the Estep case: "'The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant.'"

The court in the Cox case stated further 332 U.S. at page 453, 68 S.Ct. at page 120, 92 L.Ed. 59; "Consequently when a court finds a basis in the file for the board's action that action is conclusive. The question of the preponderance of evidence is not for trial anew. It is not relevant to the issue of the guilt of the accused for disobedience of orders. Upon the judge's determination that the file supports the board, nothing in the file is pertinent to any issue proper for jury consideration."

■■■■ After hearing the evidence and after examining the exhibits in this case, I have come to the conclusion that there is a basis in fact in this record for the classification. The defendant sought deferment on two grounds: one, that he was a minister of a sect known as Jehovah's Witnesses, and the second that he was a conscientious objector. There was full compliance with the Selective Service Act and its regulations before a determination was made rejecting deferment on both grounds.

I observe from the Selective Service file that the defendant had, upon the filing of his questionnaire (Exhibit 2–A) asserted that he was a student preparing for the ministry under the direction of the Watchtower Bible & Tract Society. He also stated that he was at that time working as a radio repairman, repairing radio receivers, and that his employer was one James Pascucci of Great Kills, Staten Island, New York. He said he was earn-

ing $30 a week and that he worked an average of 48 hours per week at this occupation. Accompanying his Selective Service questionnaire was a statement by the registrant in which he stated that he was a British subject and therefore an alien, and because of this fact he was applying for exemption from military service in the armed forces of the United States. There was also a statement accompanying the questionnaire in which the registrant stated, "I should like to point out that I am not a full-time student at any theological school. I do attend a theocratic ministry school once each week, however. This school is under the direction of the Watchtower Bible &. Tract Society. School sessions are held in the local meeting hall of Jehovah's Witnesses located on Oceanic Avenue, in Annadale."

The registrant was originally classified in Class 4-C—an alien classification—on November 1, 1948. Form 110 was mailed to him on November 18, 1948. On March 25, 1949, a form 150, a conscientious objector's form, was mailed to the registrant. This form, Exhibit 2-C, was filled out and returned by the registrant and is part of the Selective Service file.

In this form the registrant sets forth fully what he considers the basis for his conscientious objection to service in the armed forces of the United States.

After the receipt of this form the Selective Service board on April 22, 1949 reopened his case and reclassified the registrant in class 1-A-O, which qualifies a registrant for noncombatant military service, and on May 6, 1949, a form 110 was mailed to him advising him of this decision.

Subsequently the registrant sent two letters to the local draft board, Exhibits 2-E and 2-F, dated May 15, 1949. In Exhibit 2-E the registrant acknowledges receipt of his classification form, classifying him in 1-A-O. He stated: "I was classified as 4-C. I am filing this notice of appeal with you and ask that you take into consideration the fact that I am a British subject and therefore an alien."

The other letter sent the same day acknowledges receipt of his 1-A-O classi-fication and states: "I am writing to request a personal appearance before the Local Board to appeal this classification. I have in my questionnaire explained my position as a minister and I have also pointed out the fact that I am an alien."

The registrant appeared before the local board on June 8 for a personal hearing, and I find in the Selective Service file, Exhibit 2-C, dated June 8, 1949, a paper which purports to be a summary of the statement of new matter given by the registrant on that day, and it states: "Peter M. Fry appears and claims exemption as a minister of the Jehovah's Witnesses, states he does not devote full time to his work as a minister. Mr. Brenner states he is not on the list certified by the Jehovah's Witnesses. Registrant states he is not certified but he expects to be. Class 1-A." There is an illegible signature below the summary.

Subsequently the Appeal Board Panel No. 1 reviewed this classification of the registrant and rendered an opinion dated June 27, 1949, in which it rejected the registrant's claim for deferment as a minister of religion or as a divinity student and held that it was "utterly without substance."

With respect to the second ground, that there should be deferment by reason of his conscientious objection to service, the Appeal Board transmitted the file to the United States Attorney for the Eastern District of New York (the registrant then being a resident of Staten Island, which is in the Eastern District, and local board 68 being in the jurisdiction of the Eastern District of New York) for the advisory recommendation of the Department of Justice and "the return of the file to us, with such recommendation for our final disposition of the appeal."

The Selective Service file also contains Exhibit 2-j, the report of the hearing officer of the Department of Justice pursuant to Section 6(j) of the Selective Training and Service Act of 1948, 50 U.S.C.A.Appendix, § 456(j), in which I note the registrant appeared before Jackson A. Dykman, the hearing officer, in connection with his claim as a conscientious objector.

After a hearing before this officer—and it is not urged here that the registrant was not permitted to give a full and complete statement before the officer, including the submission of any documents in his possession—the hearing officer concluded that the claim of conscientious objection was not well taken and should be rejected. Indeed, at this hearing there was submitted on the stationery of the Watchtower Bible & Tract Society, now part of Exhibit 2–J, a sworn statement by Mr. Larson, the manager of the American branch, alleging that "Mr. Fry is a duly ordained minister of Jehovah's Witnesses, setting forth in this certificate that he had been duly ordained by public ceremonial on September 19, 1948, and that on August 1, 1949 he became a member of the Bethel family and that his entire time and life were spent in the service to Almighty God, none of his time being devoted to secular work." He stated further: "Five and one-half days he devotes to his work at the headquarters. His evenings and weekends he devotes to preaching the Gospel orally at the homes of the people and in his congregation. He is also assigned to do ministerial service at the Eltingville Unit of the New York City Congregation of Jehovah's Witnesses."

There follows a certification that he is a duly ordained minister.

As I have stated, this was before the hearing officer.

In his report, the hearing officer concluded that it could not have been the intention of Congress "to extend the favor of exemption to an alien who had sought refuge from British austerity here, and a year ago became convinced by listening to the radio and an itinerant preacher that our government was an instrument of Satan and thereupon conceived of himself as having made a covenant with God not to support it. It seems quite as likely to the hearing officer that registrant has left his brother-in-law's home for the more congenial atmosphere of the Bethel family rather than become imbued with any religious belief justifying an exemption. It will be noted that it was after the Appeal Board had passed on the case that the registrant began giving all his time to the Watchtower Society."

The hearing officer concludes with this recommendation: "The registrant's claim for exemption from combatant and noncombatant military service pursuant to Section 6(j) of the Selective Service Act of 1948 be denied and he be classified in Class 1–A."

There is some claim made here that the hearing officer did not have any evidence upon which to base his conclusion that the claim of conscientious objection was not taken in good faith. I cannot agree with this. The entire opinion of the hearing officer indicates that he considered all of the facts; the background of the registrant; his early training in England; his immigration to the United States in January, 1947; his attendance at a Baptist Sunday school when he was very young and later services of the Church of England as to which the hearing officer quotes the registrant as having said "that was more or less because my friends did, no interest."

He was never baptized or confirmed. His sister married an American soldier, and he came to the United States and lived with them. The hearing officer had an opportunity to observe the registrant as he appeared before him. I cannot believe that the hearings afforded to conscientious objectors deprive the hearing officer of a right to judge the credibility of witnesses. If this right were taken from the hearing officer, I could see no purpose in these hearings and indeed Congress should have then enacted the law to provide that the mere claim of conscientious objection *a fortiori* called for a classification as a conscientious objector.

How can I say, based upon this record, that there was no basis in fact for the conclusions reached?

But that is not all. The report of the hearing officer was then forwarded to the Department of Justice and I have examined a letter in the Selective Service file, Exhibit 2–K, signed by the Assistant to the Attorney General, Peyton Ford, January 23, 1950, sent to the Appeal Board Panel No. 1, which states: "After examination and review of the entire file and records, the Department of Justice finds as a matter of fact that the conscientious objections of the

above-named registrant are not sustained on the ground that he has failed to prove that such alleged objections are based upon deep-seated conscientious convictions arising out of religious training and belief. As required by Section 6(j) of the Selective Service Act of 1948 an inquiry was made in this case and an opportunity to be heard on his claim for exemption as a conscientious objector was given to the registrant by Honorable Jackson A. Dykman, hearing officer for the Southern and Eastern Districts of New York. His report is enclosed for consideration by your Board, this Department concurring in the recommendation he has made. There is also returned the Selective Service cover sheet in the above case."

The Appeal Board re-examined the case of the registrant and rendered its opinion on February 7, 1950. The Appeal Board stated among other things, "Except for the report of the hearing officer the file contains the same material as was before us last June. Then, as now, the claim is largely if not wholly based upon the registrant's membership in the Jehovah's Witnesses sect, one of whose tenets (as set forth on page 4 of the hearing officer's report) is that 'the Government of the United States is an instrument of Satan.'

"The hearing officer observed that 'It could not have been the intention of Congress to extend the favor of exemption to an alien who has sought refuge from British austerity here and a year ago became convinced by listening to the radio and an itinerant preacher that our government was an instrument of Satan * * *'. The report further sets forth 'It seems quite as likely to the hearing officer that registrant has left his brother-in-law's home for the more congenial atmosphere of the Bethel family rather than become imbued with any religious belief justifying an exemption.

"'It will be noted that it was after the Appeal Board had passed on the case that the registrant began giving all his time to the Watchtower Society.'

"We concur that the claim for conscientious objection has not been sustained.

"II. On the 4–D issue, the learned hearing officer quite rightly observes it is not within his jurisdiction. It now becomes our duty finally to pass upon it.

"For the reasons stated in our memorandum of June 29, 1949, as well as upon the basis of the additional facts of record above quoted, developed at the hearing, we hold that the registrant is not entitled to a deferment into Class 4–D."

The registrant, with the advice of counsel, then asked the Director of Selective Service of New York City to appeal to the President in behalf of the registrant. A decision was subsequently rendered by the National Selective Service Appeal Board on August 29, 1950, upholding the classification of 1–A, into which class the Appeal Board had placed the registrant on February 7, 1950.

I must say that based upon everything that has been called to my attention I cannot say that there was no basis in fact for the action of the local board. Indeed, I would be inclined to say that there was substantial basis for it.

This leaves the additional and significant point raised by the defendant that he was deprived of his right to due process upon the grounds previously set forth. I have examined most carefully the authorities cited by able counsel for the defendant in this case. Cases very strongly relied upon by the defendant were United States v. Stiles, 3 Cir., 1948, 169 F.2d 455 and United States v. Strebel, 103 F.Supp. 628, decision by Chief Judge Mellott in the District Court for the District of Kansas, filed January 16, 1952, as well as the other authorities cited by counsel.

I have also examined the case of Martin v. United States, 4 Cir., 1951, 190 F.2d 775, certiorari denied, 1951, 342 U.S. 782, 72 S.Ct. 115. I believe the case before me is more akin to the case which was before the Court of Appeals for the Fourth Circuit, in Martin v. United States, supra. I cannot find here that the failure to send a notice of reclassification after the hearing of June 8th, deprived the registrant of any right or injured him at any stage of his appeals. The court must look to sub-

stance rather than to form. The registrant was not injured in any respect by failure to receive this notice.

It is not urged here in behalf of the registrant that he lost any right to appeal. Indeed, his case was reviewed twice before the Board of Appeals and once before the National Appeal Board. In fact, his appeal to the National Appeal Board was taken at a time when he was already represented by counsel. At no time subsequent to the first appeal do I find any record nor is there any intimation here that the registrant had been injured or harmed in any respect by his failure to receive a notice of classification after the hearing of June 8th.

The registrant had, subsequent to the hearing of June 8th, a full and complete hearing before the hearing officer, Jackson A. Dykman, where he appeared on August 31, 1949. Again I must urge that at no time has it been argued here that the hearing officer did not afford him a full opportunity to urge any ground that he cared to urge in connection with his claim of conscientious objection to service in the United States armed forces.

I have already stated that he was permitted on that occasion to submit a certificate by Mr. Larson, the manager of the American branch of the Watchtower Bible & Tract Society, certifying that he had been duly ordained as a Jehovah's Witness minister, and setting forth in full the function that he was performing as a duly ordained minister and as a member of the Jehovah's Witnesses sect.

Not only was this reviewed by the Appeal Board but this was reviewed by the Attorney General's representative as indicated by the letter of Peyton Ford, Exhibit 2-K. The Appeal Board reviewed these so-called additional grounds urged before the hearing officer, grounds which by no stretch of the imagination were weaker or fewer than those which he would have urged before the local board on June 8, 1949. And the opinion of the Appeal Board, Exhibit 2-I, dated February 7, 1950, indicates quite clearly that the Board members had considered these new grounds in connection with the final determination of this appeal and after consideration of these new grounds both on the claim for deferment as a conscientious objector and as a minister of the Jehovah's Witnesses, the Appeal Board decided that the registrant should be reclassified in 1-A.

This case is clearly distinguishable therefore from the cases cited by counsel standing for the proposition that the mere failure to send the form 110 *ipso facto* requires a setting aside of the classification and a judgment of acquittal in this case.

I am deeply impressed by the language used by Judge Parker, in the Martin case, where he stated, 190 F.2d at page 779: "To hold that the order of the board was void, under such circumstances, merely because a notice was not sent to appellant of action of the board, of which he already had full notice, in order that he might take an appeal, which had already been taken for him, would be to stultify the administration of the law."

It would seem to follow that to hold here that the failure to send the notice of reclassification voided the order to report for induction despite full opportunity by the registrant to present everything favorable to him to the hearing officer, to the Appeal Board, and to the National Appeal Board, would be to "stultify the administration of the law." It is not urged before me that there was not presented in behalf of this registrant at some time or another before the final order of induction was issued, everything in behalf of this registrant that could be presented, nor is it urged that he was deprived of any appeal or that he was not availed of the processes of the Selective Service law or its regulations.

I repeat that I must look to `substance rather than to form in this case.

■ The last remaining ground urged, to wit, that the Selective Service board did not properly summarize in writing the further information given by the registrant on June 8th, I find empty of substance. There is a summary in the file, Exhibit 2-G. It is dated June 8th. The regulation does not require a full statement of everything asserted by the registrant. It requires a summary, and when one summarizes it follows that there must be some omissions.

I do not feel that there has been any credible evidence submitted to me to indicate that there was an omission of any matter of substance in the summary which in any way injured or harmed the defendant. Indeed, I cannot say conclusively that there was any omission. Exhibit 2–G purports to be a summary, and I accept it as such.

I must, therefore, deny the defendant's motion for a judgment of acquittal, and it is the judgment of this court that the defendant is guilty of the charge contained in the indictment.