UNITED STATES v. GRAHAM
(three cases).

Cr. 31020–31022.

United States District Court,
N. D. of New York.

Nov. 11, 1952.

Edmund Port, U. S. Atty., Syracuse, N. Y. (Robert J. Leamy, Oneonta, N. Y., of counsel), for the United States.

Hayden C. Covington, Brooklyn, N. Y., for defendants.

BRENNAN, District Judge.

The above named defendants are brothers residing near Cairo, New York. They profess to be members of the sect known as "Jehovah's Witnesses". Each defendant is charged in a single count in an indictment with failing to submit to induction into the armed services of the United States, in violation of the Selective Service Act 50 U.S.C.A.Appendix, § 451 et seq. In the case of each defendant the immediate act of violation, as charged in the indictment, consists of his refusal to step forward as required in the proceeding constituting induction.

Each defendant, after the entry of a plea of not guilty to the indictment, appeared by an attorney, waived a jury trial, and consented that the three cases be tried together before the court; the evidence received to be applicable in each individual case.

The government made a prima facie case by the introduction of the Selective Service file of each defendant, and it was stipulated that each defendant refused at the induction center to take the necessary step to accomplish his induction.

Each defendant was called as a witness in his own behalf, and the essential part of his testimony evolves around his personal appearance before the Selective Service Board on February 28, 1951. The acting chairman of the Board was called by the government in rebuttal, and the material portions of his testimony also concerns the occurrences at the hearing on February 28, 1951, and the action of the Board subsequent thereto.

The defendants each make two contentions: (1), that the local board did not in fact reclassify the registrants at or after their appearance before the Board on February 28, 1951, as required by the Selective Service Regulations; (2), that there is no factual basis in the Selective Service files of each defendant which would warrant his I-A classification. At the conclusion of the trial it was agreed that counsel would brief only the first contention, inasmuch as a decision adverse to the government would require a verdict of not guilty. If the decision were otherwise, then counsel would be afforded the opportunity to argue or brief the second contention.

Defendants' first contention will now be considered and decided. A brief statement of the essential findings will be made below which will apply in each case, unless otherwise indicated.

■ The defendants were properly registered with Local Selective Service Board No. 22 at Catskill, New York. They were classified by the Board and, after some changes in their individual classifications, were each classified on February 14, 1951, as 1-A. Upon the written request of each defendant, they were afforded the opportunity to appear personally before the Board on February 28, 1951, to submit additional evidence, review their files, discuss their classifications, and call the attention of the Board to any matters which may have been overlooked. Each defendant did so appear at the same time and in the presence of a couple of friends and co-religionists. The occurrences and discussion at the hearing may be considered as in dispute and will be referred to below. It is sufficient to say that each defendant was informed at such hearing that his classification would or did remain as 1-A. With the cooperation of the Board, the defendants appealed from their 1-A classification. Since in each case the appeal involved a conscientious objection claim, the usual procedure of referring same to a hearing officer was followed, and

on November 5, 1951, the defendants Howard Graham and Glenn Graham were classified 1–O by the appeal board, and the defendant Douglas Graham was classified 1–A. Defendants Howard Graham and Glenn Graham thereupon appealed to the National Selective Service Appeal Board, and on March 3, 1952, Howard Graham was classified as 1–A, and on February 25, 1952, Glenn was similarly classified.

Before attempting to determine whether or not the defendants were accorded the full measure of their rights at the hearing held on February 28, 1951, reference will be made to the applicable regulations as they existed at the time in question. Regulation 1624.1(a) affords an opportunity for the registrant after his classification to appear in person before the local Board. There was no question but that each defendant availed himself of the opportunity, and that same was afforded. Regulation 1624.2, subdivision (b), provides that the registrant may discuss his classification, may present further information, and may direct attention to information in his file which he believes the local Board has overlooked. Subdivisions (c) and (d) define the duties of the Board after the registrant has appeared before it, and by their terms require that the local Board "—shall again classify the registrant in the same manner as if he had never before been classified", and shall thereafter mail to the registrant a notice of such classification.

The factual question here is whether or not the local Board performed its duties as indicated in the above regulations as they then existed. It is fair to say that no new evidence or information was offered or given by any of the three defendants. They were ready to argue that they were improperly classified by reason of their religious belief, and were ready to submit additional writings pertaining to the doctrines of their sect. They each testified that the spokesman for the Board advised them that the hands of the Board were tied, and in substance, that each classification would remain unchanged unless

new evidence were submitted. An examination of the file in each case indicates a notation dated "2/28/51" on the back of each questionnaire to the effect that there was no change in classification. On the inside of the outside cover of each file there is the notation "2/28/51 appd. before bd. No change in classification. CGC HCW AB SLT" (the initials of the members of the Board). The initials "SLT" do not appear on the last mentioned notation in the file of Howard Graham.

A memo dated February 28, 1951, signed by the acting chairman of the Board, is found in each file and is quoted in part below:

"Registrant presented no new evidence at this hearing and was advised by the board that his classification would remain Class 1–A in accordance with the unanimous vote of all board members present."

There is no other record of any vote or any other action constituting a classification anew, as required by the Regulations.

The oral testimony of the acting chairman of the Board, called as a witness by the government, disposes of any uncertainty arising from the notations above referred to. Upon cross-examination as to the action of the Board on the occasion of the appearance of defendants on February 28, 1951, he testified in part as follows:

"Q. Then what happened? A. The classification was continued.

"Q. But you did not classify them on the 28th at the hearing? A. It was continued.

\* \* \* \* \* \*

"Q. After you heard them you told them that unless they presented new evidence you could not reopen or reconsider their case upon personal appearance; is that right? A. No. I said if they could not produce any new evidence before the board we could not reconsider the classification.

"Q. That is what you told them? A. That is correct."

From all of the evidence it seems inescapable that the Board did not "—again classify the registrant in the same manner as if he had never before been classified."

■ It is urged that by .amendment· to the Regulation the procedure adopted by the Board would now be recognized as entirely adequate. Defendants' rights, however, were fixed by the Regulation as it then existed.

An appealing argument is made that the continuation of each defendant in the classification given them prior to February 28, 1951, did not affect his fundamental rights, and did not violate the spirit of the Selective Service Regulations. It is urged that this is especially true, since each registrant was afforded the right to appeal and had full opportunity to present additional evidence, and that there is no showing that defendants have been either collectively or separately prejudiced.

■ Judicial precedent, however, seems to indicate otherwise. As early as 1943, in the case of United States v. Laier, D.C., 52 F.Supp. 392, it was held that the denial of a personal hearing provided for by the Regulations was a denial of due process, and, since the presentation of additional evidence is but one of the rights afforded on such hearing, the argument was rejected that subsequent appeals cure such an error. See United States v. Romano, D.C., 103 F.Supp. 597. A personal appearance before the Board and a hearing wherein the position is taken by the Board that the classification could not be reconsidered is, in effect, no hearing at all. It is at least a hearing without hope of relief. The absence of additional evidence or new information did not relieve the Board from the requirement that each registrant be classified anew. United States v. Stiles, 3 Cir., 169 F.2d 455.

The Court has not overlooked the case of Martin v. United States, 4 Cir., 190 F.2d 775, but it is factually distinguishable,

since here we have the testimony of the chairman to the effect that in the absence of additional evidence, the Board could not; reconsider the classification of defendants. We also have here the undenied testimony of the three defendants that they were told by the Board that its hands were tied.

■ In the recent case of Ex parte Fabiani, D.C., 105 F.Supp. 139, there is discussed the increasing willingness of courts to scrutinize the action of local boards, and the cases cited above, together with United States v. Strebel, D.C., 103 F.Supp. 628, are indicative of the fact that the regulations must be strictly construed in favor of the registrant.

It is conceded that the board did not mail to any of the defendants the notice of classification, as provided in Regulation 1624.2(d). This omission in itself, however, does not destroy the validity of the order of induction. Martin v. United States, supra; it being conceded that each defendant had actual notice on February 28, 1951, that his classification was unchanged.

■ A full and fair disposition of the defendants' contention at every level of the Selective Service system is the measure of their rights. United States v. Romano, supra. Unsubstantial deviations from procedural methods, as found in Martin v. United States, supra, and United States v. Fry, D.C., 103 F.Supp. 905, do not void the order of induction. The right of each registrant to a new classification after a personal hearing is, however, a substantial right which the board is bound to afford him at that particular level of the Selective Service system.

It is found that in the case of each defendant-registrant he was not classified on or after February 28, 1951, as required by the regulations above referred to, and it is concluded that each defendant is entitled to and is hereby granted a judgment of acquittal.